UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

IESHIA P.,[1]

               Plaintiff,

    v.

COMMISSIONER, Social Security
Administration,

               Defendant.

_____

Case No. 3:20-cv-01770-MK

**OPINION
AND ORDER**

**Kasubhai,** United States Magistrate Judge:

Plaintiff Ieshia P. seeks judicial review of the final decision of the Commissioner of the

Social Security Administration ("Commissioner") denying her application for supplemental

security income ("SSI") and disability insurance benefits ("DIB") under the Social Security Act

(the "Act"). This Court has jurisdiction to review the Commissioner's decision under 42 U.S.C. §

405(g). All parties have consented to allow a Magistrate Judge to enter final orders and judgment

in this case in accordance with Federal Rule of Civil Procedure 73 and 28 U.S.C. § 636(c). *See*

ECF No. 7. For the reasons below, the Commissioner's final decision is REVERSED and this

case is REMANDED for immediate calculation of benefits.

---

[1] In the interest of privacy, the Court uses only the first name and last name initial of non-
government parties whose identification could affect Plaintiff's privacy.

## PROCEDURAL BACKGROUND

Plaintiff filed applications for SSI and DIB in January 2019, alleging an amended disability onset date of January 11, 2019. Tr. 28. [2] Her applications were denied initially and upon reconsideration. Tr. 133–41, 144–49. Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"), and a hearing was held by video conference in June 2020. Tr. 28. On July 20, 2020, the ALJ issued a decision finding Plaintiff not disabled under the Act. Tr. 25–43. The Appeals Council denied Plaintiff's request for review, making the ALJ's decision the final decision of the Commissioner. Tr. 1–6. This appeal followed.

## FACTUAL BACKGROUND

Plaintiff was 45 years old on her alleged onset date. Tr. 41. She has an associate's degree in fashion design and has past relevant work experience as a credit-clerk, weight reduction specialist, shift manager, and a coffee maker. Tr. 60, 42. Plaintiff alleged disability based on several physical impairments, which included irritable bowel syndrome ("IBS"), "left knee degenerative joint disease, and a history of fibroids status-post hysterectomy," as well as several mental impairments which included "generalized anxiety, panic disorder, major depressive disorder, borderline personality disorder" and post-traumatic stress disorder ("PTSD"). Pl's. Br. 2, ECF No 17.

## LEGAL STANDARD

The court must affirm the Commissioner's decision if it is based on proper legal standards and the findings are supported by substantial evidence in the record. *Hammock v. Bowen*, 879 F.2d 498, 501 (9th Cir. 1989). Substantial evidence is "more than a mere scintilla. It

---

[2] "Tr." citations are to the Administrative Record. ECF No. 11. At the hearing, Plaintiff also withdrew her DIB claim. Tr. 28–29.

means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quotation omitted). The court must weigh "both the evidence that supports and detracts from the [Commissioner's] conclusion." *Martinez v. Heckler*, 807 F.2d 771, 772 (9th Cir. 1986). "Where the evidence as a whole can support either a grant or a denial, [the court] may not substitute [its] judgment for the ALJ's." *Massachi v. Astrue*, 486 F.3d 1149, 1152 (9th Cir. 2007) (citation omitted); *see also Burch v. Barnhart*, 400 F.3d 676, 680–81 (9th Cir. 2005) (holding that the court "must uphold the ALJ's decision where the evidence is susceptible to more than one rational interpretation"). "[A] reviewing court must consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence." *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007) (quotation omitted).

The initial burden of proof rests on the claimant to establish disability. *Howard v. Heckler*, 782 F.2d 1484, 1486 (9th Cir. 1986). To meet this burden, the claimant must prove an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected . . . to last for a continuous period of no less than 12 months." 42 U.S.C. § 423(d)(1)(A).

The Commissioner has established a five-step process for determining whether a person is disabled. *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987); 20 C.F.R. §§ 404.1520, 416.920. First, the Commissioner determines whether a claimant is engaged in "substantial gainful activity"; if so, the claimant is not disabled. *Yuckert*, 482 U.S. at 140; 20 C.F.R. §§ 404.1520(b), 416.920(b). At step two, the Commissioner determines whether the claimant has a "medically severe impairment or combination of impairments." *Yuckert*, 482 U.S. at 140–41; 20 C.F.R. §§ 404.1520(c), 416.920(c). A severe impairment is one "which significantly limits [the claimant's]

physical or mental ability to do basic work activities[.]" 20 C.F.R. §§ 404.1520(c), 416.920(c). If not, the claimant is not disabled. *Yuckert*, 482 U.S. at 141. At step three, the Commissioner determines whether the impairments meet or equal "one of a number of listed impairments that the [Commissioner] acknowledges are so severe as to preclude substantial gainful activity." *Id.*; 20 C.F.R. §§ 404.1520(d), 416.920(d). If so, the claimant is presumed disabled; if not, the analysis proceeds. *Yuckert*, 482 U.S. at 141.

At this point, the Commissioner must evaluate medical and other relevant evidence to determine the claimant's "residual functional capacity" ("RFC"), an assessment of work-related activities that the claimant may still perform on a regular and continuing basis, despite any limitations his impairments impose. 20 C.F.R. §§ 404.1520(e), 404.1545(b)–(c), 416.920(e), 416.945(b)–(c). At the fourth step, the Commissioner determines whether the claimant can perform "past relevant work." *Yuckert*, 482 U.S. at 141; 20 C.F.R. §§ 404.1520(e), 416.920(e). If the claimant can work, he is not disabled; if he cannot perform past relevant work, the burden shifts to the Commissioner. *Yuckert*, 482 U.S. at 146 n.5. At step five, the Commissioner must establish that the claimant can perform other work that exists in significant numbers in the national economy. *Id.* at 142; 20 C.F.R. §§ 404.1520(e)–(f), 416.920(e)–(f). If the Commissioner meets this burden, the claimant is not disabled. 20 C.F.R. §§ 404.1566, 416.966.

## THE ALJ'S DECISION

At step one, the ALJ found that Plaintiff met the insured requirements of the Act and had not engaged in substantial gainful activity since her alleged onset date. Tr. 31. At step two, the ALJ found that Plaintiff had the following severe impairments: PTSD, generalized anxiety disorder, major depressive disorder, and cannabis use disorder. *Id*. At step three, the ALJ found that Plaintiff did not have an impairment or combination thereof that met or medically equaled

the severity of a listed impairment. Tr. 33. The ALJ found that Plaintiff had an RFC to perform a

full range of work at all exertional levels but with the following nonexertional limitations: she

could perform "simple, routine repetitive tasks of 2–3 steps, with a reasoning level of a 1–2, and

occasional, brief, superficial contact with others." Tr. 34–35. At step four, the ALJ found that

Plaintiff could not perform any past relevant work. Tr. 41. At step five, the ALJ found, given

Plaintiff's age, education, work experience, and RFC, there were jobs that existed in significant

numbers in the national economy such that Plaintiff could sustain employment despite her

impairments. *Id*. The ALJ thus found Plaintiff was not disabled within the meaning of the Act.

Tr. 42.

## DISCUSSION

Plaintiff asserts remand is warranted for two reasons: (1) the ALJ failed to give clear and

convincing reasons for rejecting Plaintiff's subjective symptom testimony; and (2) the ALJ failed

to give legally sufficient reasons for rejecting medical opinion evidence.

## I.    Subjective Symptom Testimony

Plaintiff argues that the ALJ rejected her symptom testimony for reasons that were

neither clear nor convincing. Pl.'s Br. 5. When a claimant has medically documented

impairments that could reasonably be expected to produce some degree of the symptoms

complained of, and the record contains no affirmative evidence of malingering, "the ALJ can

reject the claimant's testimony about the severity of . . . symptoms only by offering specific,

clear and convincing reasons for doing so." *Smolen v. Chater*, 80 F.3d 1273, 1281 (9th Cir.

1996) (internal citation omitted). A general assertion [that] the claimant is not credible is

insufficient; instead, the ALJ must "state which . . . testimony is not credible and what evidence

suggests the complaints are not credible." *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993).

The reasons proffered must be "sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony." *Orteza v. Shalala*, 50 F.3d 748, 750 (9th Cir. 1995) (internal citation omitted). If the ALJ's finding regarding the claimant's subjective symptom testimony is "supported by substantial evidence in the record, [the court] may not engage in second-guessing." *Thomas v. Barnhart*, 278 F.3d 947, 959 (9th Cir. 2002) (internal citation omitted).

Social Security Ruling ("SSR") 16-3p provides that "subjective symptom evaluation is not an examination of an individual's character," and requires that the ALJ consider all the evidence in an individual's record when evaluating the intensity and persistence of symptoms.[3] SSR 16-3p, *available at* 2016 WL 1119029, at *1–2. The ALJ must examine "the entire case record, including the objective medical evidence; an individual's statements about the intensity, persistence, and limiting effects of symptoms; statements and other information provided by medical sources and other persons; and any other relevant evidence in the individual's case record." *Id.* at *4.

During the administrative hearing, Plaintiff testified that her mental impairments severely impaired her cognition. She reported difficulty with driving and grocery shopping due to getting lost. Tr. 58, 67. Plaintiff also suffered from memory problems, which often caused her to lose her train of thought mid-sentence. Tr. 68.

Plaintiff also reported complications stemming from a recent hysterectomy. Tr. 36. The medication Plaintiff took after surgery caused dizziness and required her to use a walker. Tr. 70. Finally, she also testified that she always needs to be near a restroom due to her IBS Tr. 61.

---

[3] Effective March 28, 2016, SSR 16-3p superseded and replaced SSR 96-7p, which governed the assessment of claimant's "credibility." *See* SSR 16-3p.

The ALJ rejected Plaintiff's subjective symptom testimony relating to her physical impairments on the grounds that while her impairments could reasonably be expected to cause some of the alleged symptoms, her "statements concerning the intensity, persistency and limiting effects of these symptoms [were] not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in [the] decision." Tr. 35. As for her mental impairments, the ALJ found that Plaintiff's symptoms warranted limiting her to "simple, routine repetitive tasks of 2–3 steps, with a reasoning level of 1–2." *Id*. However, based on Plaintiff's reported alertness during exam, goal-oriented thinking, and "generally normal" cognition, the ALJ concluded that further limitations were not warranted. Tr. 38.

The Commissioner asserts that the ALJ properly rejected Plaintiff's complaints relating to her mental impairments because they conflicted with Plaintiff's activity levels and the treatment record.

## A.    Daily Activities

As noted, the Commissioner asserts the ALJ rejected Plaintiff's testimony based on her daily activities. Def.'s Br. 2, ECF No. 19. Activities of daily living can support an ALJ's discounting a claimant's testimony in two ways: (1) as evidence a claimant can work if the activities "meet the threshold for transferable work skills"; or (2) where the activities "contradict [a claimant's] testimony." *See Orn*, 495 F.3d at 639. A claimant, however, need not be utterly incapacitated to receive disability benefits, and sporadic completion of minimal activities is insufficient to support a negative credibility finding. *Vertigan v. Halter*, 260 F.3d 1044, 1050 (9th Cir. 2001); *see also Reddick*, 157 F.3d at 722 (9th Cir. 1998) (requiring the level of activity to be inconsistent with the claimant's alleged limitations to be relevant to her credibility).

Here, the ALJ listed multiple activities that included Plaintiff's ability to drive, walk/care for her dog, and exercise in the parking lot of her apartment. Tr. 33. The Ninth Circuit has consistently instructed, however, that such a modest level of activity is insufficient to reject subjective complains. *See Vertigan*, 260 F.3d at 1050 ("This court has repeatedly asserted that the mere fact that a Plaintiff has carried on certain daily activities, such as. . . driving a car, or limited walking for exercise, does not in any way detract from her credibility as to her overall disability. One does not need to be 'utterly incapacitated' in order to be disabled." (quoting *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989)).

The ALJ also highlighted Plaintiff's part-time work braiding hair and creation of a "Go Fund Me" account as activities that contradicted her testimony relating to impaired cognition. Tr. 34. However, the ALJ failed to explain how those activities conflicted with Plaintiff's testimony. The ALJ's discussion of Plaintiff's daily activities failed to explain "what symptom testimony [was] not credible and what facts in the record lead to that conclusion." *Smolen*, 80 F.3d at 1284; *see also Dodrill*, 12 F.3d at 918. As this Court has repeatedly explained, "an ALJs mere recitation of a claimant's activities is insufficient to support rejection of the claimant's testimony as a matter of law." *Shirley C. v. Comm'r, Soc. Sec. Admin.*, No. 1:20-cv-01212-MK, 2021 WL 3008265, at *6 (D. Or. July 15, 2021). In other words, other than generally summarizing Plaintiff's activities, the ALJ failed to explain how any of the listed activities undermined her subjective symptom testimony. As such, this was not a clear and convincing reason to reject Plaintiff's testimony. *See David H. v. Comm'r, Soc. Sec. Admin.*, No. 3:19-cv-00571-MK, 2020 WL 1970811, at *4 (D. Or. Apr. 24, 2020) (rejecting ALJ's reliance on claimant's activities where "the ALJ did not explain how these minimal activities undermined [the claimant's] symptom testimony") (citation omitted).

**B.    Medical Record**

The Commissioner next argues that Plaintiff's subjective symptom testimony was contradicted by the medical record. Def.'s Br. 3. The Commissioner directs the Court to reports in which Plaintiff presented with "normal" mental status exam findings. *See* Tr. 1034 (presenting as "alert and oriented"); Tr. 1131 (same); Tr. 3701 (same); Tr. 1128 (presenting with "goal-oriented thinking"); Tr. 1128 (same); Tr. 1439 (same); Tr. 3708 (same); Tr. 1145 (presenting with pleasant and cooperative demeanor); Tr. 1439 (same); Tr. 2999 (same).

The Ninth Circuit, however, has rejected reliance on similar "normal" reports in rejecting a claimant's testimony particularly in the mental health context. *See Ghanim v. Colvin*, 763 F.3d 1154, 1164 (9th Cir. 2014) (rejecting an ALJ's reliance on the claimant's "good eye contact, organized and logical thought content, and focused attention" because "[t]hese observations of cognitive functioning…[did] not contradict [the claimant's] reported symptoms of depression and social anxiety").

An ALJ may not cherry-pick isolated instances of favorable psychological symptoms when the record as a whole reflects longstanding psychological disability as is the case here. *See Ghanim*, 763 F.3d at 1164; *see also Garrison v. Colvin*, 759 F.3d 995, 1017 (9th Cir. 2014). For example, in January 2019, Plaintiff required inpatient psychiatric care after experiencing a "diminished appetite, racing thoughts, rumination, anhedonia, hypervigilance, paranoia, fear of going outside, and lack of motivation." Tr. 1001. About a month later, Plaintiff presented as "very emotionally dysregulated," with "tangential, emotional, intense [thoughts and] crying." Tr. 642. Plaintiff reported feeling depressed and hopeless daily. *Id*. In February 2019, Plaintiff was ultimately asked to leave the hospital due to her disruptive behavior. Tr. 1012–15. Upon leaving the psychiatric unit, however, Plaintiff suffered a panic attack. Tr. 997.

About five months later, in July 2019, Plaintiff reported suicidal ideations. Tr. 1616. That

same month, Plaintiff reported her stress and anxiety at a nine on a ten-point scale. Tr. 1452–58.

In January 2020, Plaintiff again reported suicidal ideations. Tr. 3014; *see also* Tr. 3706

(reporting feeling "paralyzed," having "shot nerves," and an inability to do simple chores such as

laundry). Thus, the medical record in this case was not a clear and convincing reason to reject

Plaintiff's testimony.

## II.    Medical Opinion Evidence

Plaintiff also challenges the ALJ's assessment of the medical opinion evidence. Pl.'s Br.

9–11. For disability claims filed on or after March 27, 2017, new regulations for evaluating

medical opinion evidence apply. *Revisions to Rules Regarding the Evaluation of Medical*

*Evidence* ("*Revisions to Rules*"), 2017 WL 168819, 82 Fed. Reg. 5844, at *5867–68 (Jan. 18,

2017); *see also Tyrone W. v. Saul*, No. 3:19-cv-01719-IM, 2020 WL 6363839, at *6 (D. Or. Oct.

28, 2020) ("For claims filed on or after March 27, 2017, Federal Regulation 20 C.F.R. §

416.920c governs how an ALJ must evaluate medical opinion evidence.").

Under the new regulations, the Commissioner is no longer required to supply "specific

evidentiary weight to medical opinions; this includes giving controlling weight to any medical

opinion." *Allen O. v. Comm'r of Soc. Sec.*, 3:19-cv-02080-BR, 2020 WL 6505308, at *5 (D. Or.

Nov. 5, 2020) (citing *Revisions to Rules*, 2017 WL 168819, at *5867–68). Instead, ALJs must

consider every medical opinion in the record and evaluate each opinion's persuasiveness. 20

C.F.R. §§ 404.1520c(a), 416.920c(a). The two most important factors in doing so are the

opinion's "supportability" and "consistency." *Id.* ALJs must articulate "how [they] considered

the supportability and consistency factors for a medical source's medical opinions . . . in [their]

decision." 20 C.F.R. §§ 404.1520c(b)(2), 416.1520c(b)(2). With regard to supportability, the

"more relevant the objective medical evidence and supporting explanations presented by a medical source are to support [their] medical opinion[], the more persuasive the medical opinions . . . will be." 20 C.F.R. §§ 404.1520c(c)(1), 416.920c(c)(1). As to consistency, the "more consistent a medical opinion[] is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion[] . . . will be." 20 C.F.R. §§ 404.1520c(c)(2), 416.920c(c)(2). ALJs may consider other factors relating to the provider's relationship with the claimant; however, they are not required to do so except in a limited number of circumstances. 20 C.F.R. §§ 404.1520c(b)(3), 416.1520c(b)(3).

The parties do not dispute that the new regulations apply. They do, however, dispute the relevance of existing Ninth Circuit case law and reviewing standards in light of the new regulations.[4] *See, e.g.*, *Robert S. v. Saul*, No. 3:19-cv-01773-SB, 2021 WL 1214518, at *4 (D. Or. Mar. 3, 2021) (noting that "the Commissioner revised agency regulations to eliminate the hierarchy of medical opinions"); *Thomas S. v. Comm'r of Soc. Sec.*, 2020 WL 5494904, at *2 (W.D. Wash. Sept. 11, 2020) (noting that the "hierarchy [for treatment of medical opinion evidence] underpinned the requirement in the Ninth Circuit that an ALJ must provide clear and convincing reasons to reject an uncontradicted doctor's opinion and specific and legitimate reason where the record contains contradictory opinion"). The Ninth Circuit has not yet addressed whether or how the new regulations alter the standards set forth in prior cases for rejecting medical opinion evidence. *See Robert S.*, 2021 WL 1214518, at *4.

---

[4] Plaintiff asserts that the "requirement for 'specific and legitimate' reasoning survives under the new regulations." Pl.'s Br. 10, ECF No. 17. The Commissioner argues that "the new regulations eliminate any semblance of hierarchy of medical opinions and state that the agency does not defer to any medical opinions[.]" Def.'s Br. 6–7, ECF. No. 19

Given the Act's broad grant of authority to the agency to adopt rules regarding "proofs and evidence," prior caselaw must yield to the Commissioner's new, permissible regulations to the extent older cases expressly relied on the former regulations. *Bowen*, 482 U.S at 145 ("The Act authorizes the Secretary to 'adopt reasonable and proper rules and regulations to regulate and provide for the nature and extent of the proofs and evidence and the method of taking and furnishing the same' in disability cases.") (citing 42 U.S.C. § 405(a)); *Nat'l Cable & Telecommunications Ass'n v. Brand X Internet Servs.*, 545 U.S. 967, 982–83 (2005) (holding that courts should grant *Chevron* deference to regulatory changes that conflict with prior judicial precedent, unless a court's prior construction followed from the unambiguous terms of the statute and thus left no room for agency discretion); *Emilie K. v. Saul*, 2021 WL 864869, at *4 (E.D. Wash. Mar. 8, 2021) (collecting cases and observing "[m]ost District Courts to have addressed this issue have concluded that the regulations displace Ninth Circuit precedent").

The new regulations do not, however, upend the Ninth Circuit's entire body of caselaw relating to medical evidence, which remain binding on this Court. For example, it remains true that ALJs may not cherry-pick evidence in discounting a medical opinion. *Ghanim*, 763 F.3d at 1162; *see also Holohan v. Massanari*, 246 F.3d 1195, 1207 (9th Cir. 2001) (reversing ALJ's selective reliance "on some entries in [the claimant's records while ignoring] the many others that indicated continued, severe impairment"). Nor may ALJs dismiss a medical opinion without providing a thorough, detailed explanation for doing so:

> To say that medical opinions are not supported by sufficient objective findings or are contrary to the preponderant conclusions mandated by the objective findings does not achieve the level of specificity our prior cases have required, even when the objective factors are listed seriatim. The ALJ must do more than offer his own conclusions. He must set forth his own interpretations and explain why they, rather than the doctors', are correct.

*Regennitter v. Comm'r of Soc. Sec. Admin.*, 166 F.3d 1294, 1299 (9th Cir. 1999) (citation

omitted). In other words, while the new regulations eliminate the previous hierarchy of medical

opinion testimony that gave special status to treating physicians, ALJs must still provide

sufficient reasoning for federal courts to engage in meaningful appellate review. *See Bunnell v.

Sullivan*, 947 F.2d 341, 346 (9th Cir. 1991) (explaining that "a reviewing court should not be

forced to speculate as to the grounds for an adjudicator's rejection" of certain evidence); *see also

Treichler v. Commissioner of Soc. Sec. Admin.*, 775 F.3d 1090, 1103 (9th Cir. 2014) ("Although

the ALJ's analysis need not be extensive, the ALJ must provide some reasoning in order for us to

meaningfully determine whether the ALJ's conclusions were supported by substantial

evidence."). With these principles in mind, the Court turns to the ALJ's assessment of the

medical evidence.

### A.    Catherine Lee, QMHP

The sole medical opinion at issue here is that of Catherine Lee, Qualified Mental Health

Professional ("QMHP"), who Plaintiff argues the ALJ improperly rejected. Pl's Br. 9.

In May 2020, QMHP Lee completed a mental residual functional capacity assessment of

Plaintiff. Tr. 3019–21. QMHP Lee found that Plaintiff's ability to "remember locations and

work-like procedures"; "carry out simple (1–2 step) repetitive instructions"; and "understand,

remember, and carry out detailed (3 steps or more) instructions" was extremely limited. Tr. 3019.

QMHP Lee found that Plaintiff's ability to "respond to requests, suggestions, criticism,

correction, and challenges from supervisors"; "work cooperatively and handle conflicts with

coworkers"; and "keep social interactions free of excessive irritability, sensitivity,

argumentativeness" was extremely limited. Tr. 3020. QMHP Lee found that Plaintiff's ability to

"work at an appropriate and consistent pace and complete tasks in a timely manner"; "ignore or

avoid distractions while working close to or with others without interrupting or distracting

them"; "sustain an ordinary routine and regular attendance at work"; "work a full day and

complete a full week without needing more than the allotted number or length of rest periods

during the day"; and "respond to demands and adapt to changes" was extremely limited. *Id.*

QMHP Lee further found that Plaintiff would likely miss more than 2 days of work a

month due to her symptoms, would be distracted and off-task about 20% during a typical

workweek, and had been exhibiting these symptoms for the past ten years. Tr. 3020–21.

The ALJ found Ms. Lee's opinion to be unpersuasive for two reasons. Tr. 39. First, the

ALJ found Ms. Lee's opinion that Plaintiff had been dealing with debilitating symptoms for the

past ten years was unsupported by the record. *Id.* Second, the ALJ found that QMHP Lee's

assessment of the severity of Plaintiff's symptoms was inconsistent with other reports in the

record that highlighted Plaintiff's intact grooming, pleasant demeanor, general alertness, intact

memory, goal-oriented thinking, and normal cognition. Tr. 39–40.

Plaintiff concedes that QMHP Lee's opinion that her current symptoms had been present

for the decade before was not supported by the record. Pl.'s Br. 11. That rationale standing alone,

however, was not sufficient to reject the of her remainder opinion about Plaintiff's functioning

levels at the time of the assessment. Accordingly, the ALJ was required to supply additional

reasons for rejecting the provider's opinion.

The ALJ's second rationale for rejecting the opinion—Plaintiff's presentation at medical

appointments with unremarkable mental status examination findings— also fails to justify the

rejection of the opinion because the ALJ failed to read such findings "in context of the overall

diagnostic picture[.]" *Ghanim*, 763 F.3d at 1162; *see also Holohan*, 246 F.3d at 1207 (reversing

ALJ's selective reliance "on some entries in [the claimant's records while ignoring] the many others that indicated continued, severe impairment").

The limitations opined by QMHP Lee find significant support in the record. For example, Plaintiff's limitations interacting with coworkers is supported by Plaintiff's past anti-social behavior, such as getting into conflicts with other patients in her psychiatric unit and ultimately being asked to leave. Tr. 1002, 1012. Plaintiff's limitations regarding cognition and concentration are consistent with reports that document Plaintiff's impaired cognition and severe depression. Tr. 642, 997, 1001, 1616, 3014, 3706. Thus, the ALJ's rejection of QMHP Lee's opinion based on lack of consistency with the record was error. Because the ALJ improperly assessed the opinion of QMHP Lee this case must be remanded.

## III.    Remand

A reviewing court has discretion to remand an action for further proceedings or for a finding of disability and an award of benefits. *See, e.g.*, *Stone v. Heckler*, 761 F.2d 530, 533 (9th Cir. 1985). Whether an action is remanded for an award of benefits or for further proceedings depends on the likely utility of additional proceedings. *Harman v. Apfel*, 211 F.3d 1172, 1179 (9th Cir. 2000). In determining whether an award of benefits is warranted, the court conducts the "three-part credit-as-true" analysis. *Garrison*, 759 F.3d at 1020. Under this analysis the court considers whether: (1) the ALJ has failed to provide legally sufficient reasons for rejecting evidence; (2) the record has been fully developed and further proceedings would serve no useful purpose; and (3) if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand. *See Dominguez v. Colvin*, 808 F.3d 403, 407 (9th Cir. 2015). Even if all the requisites are met, however, the court may still remand for further proceedings "when the record as a whole creates serious doubt as to whether the claimant is, in

fact, disabled[.]" *Garrison*, 759 F.3d at 1021. "Serious doubt" can arise when there are "inconsistencies between the claimant's testimony and the medical evidence," or if the Commissioner "has pointed to evidence in the record the ALJ overlooked and explained how that evidence casts serious doubt" on whether the claimant is disabled under the Act. *Dominguez*, 808 F.3d at 407 (citing *Burrell v. Colvin*, 775 F.3d 1133, 1141 (9th Cir. 2014)) (internal quotations omitted).

Here, the first requisite is met based on the errors discussed above. The ALJ failed to provide clear and convincing reasons for rejecting Plaintiff's subjective symptom testimony and failed to provide legally sufficient reasons for rejecting the opinions of QMHP Lee.

As to the second requisite, the Ninth Circuit has held that remanding for proceedings rather than for an immediate payment of benefits serves a useful purpose where "the record has [not] been fully developed [and] there is a need to resolve conflicts and ambiguities." *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1101 (9th Cir. 2014) (internal quotations and citations omitted). In *Treichler*, the court relied on "significant factual conflicts in the record between [the claimant's] testimony and objective medical evidence" to conclude remanding for further proceedings was the appropriate remedy. *Id*. at 1105. Specifically, the claimant testified that he would lose control of his bladder during the day, though treatment notes revealed the issue occurred only at night. *Id*. He also testified that he experienced fecal incontinence, but the single medical report discussing the issue stated that the claimant complained of constipation and denied problems with fecal incontinence. *Id*. The claimant also testified that he had debilitating pain twice a week, though he reported to a physician that his pain medication made life tolerable and testified that medication alleviated a lot of the pain. *Id*. Based on these significant conflicts, the court found that a remand for further proceedings was the appropriate remedy. *Id*. at 1107.

Here, unlike in *Treichler*, the medical evidence of record is consistent with Plaintiff's testimony. At her hearing, Plaintiff testified that she was prone to panic attacks, needed a personal care assistant to help her do daily chores, and suffered from memory lapses. Tr. 63, 68–69. That testimony is fully consistent with QMHP Lee's opinion, which states that Plaintiff's ability to handle conflicts, maintain personal hygiene and attire, and remember simple instructions were all extremely limited. Tr. 3019–21. Because the Commissioner has failed to identify any significant factual conflicts between Plaintiff's testimony and the medical record, such as those found in *Treichler*, a remand for an award of benefits is appropriate.

As to the third requisite, if the discredited evidence were credited as true, the ALJ would have to find Plaintiff disabled on remand. QMHP Lee reported that Plaintiff's impairments would render her unable to perform simple work tasks for 20% of a normal work week. Tr. 3020. The Vocational Expert testified that an individual with such an impairment would be unable to sustain gainful employment. Tr. 77. Thus, Plaintiff satisfies the third requisite.

If a court concludes, as in this case, that a claimant meets the three criteria of the credit-as-true standard, the improperly discredited evidence is credited as true and remand for an award of benefits is appropriate unless "the record as a whole creates serious doubt as to whether the claimant is, in fact, disabled with the meaning of the Social Security Act." *Garrison*, 759 F.3d at 1020–21 (citations omitted). Considering the record as a whole, the Court finds that there is no reason for serious doubt as to whether Plaintiff is disabled. *See id.* at 1021; *see also Revels v. Berryhill*, 874 F.3d 648, 668 n.8 (9th Cir. 2017) (explaining that where each of the credit-as-true factors is met, only in "rare instances" does the record as a whole leave "serious doubt as to whether the claimant is actually disabled") (citing *Garrison*, 759 F.3d at 1021). Thus, the Court

exercises its discretion and credits the erroneously discredited evidence as true and remands this case for an immediate calculation and payment of benefits.

## CONCLUSION

For the reasons above, the Commissioner's decision was not based on  substantial evidence. Accordingly, the Commissioner's decision is REVERSED and this case REMANDED pursuant to sentence four of 42 U.S.C. § 405(g) for an immediate calculation and payment of benefits.

IT IS SO ORDERED.

DATED this 2nd day of March 2022.

s/ Mustafa T. Kasubhai
MUSTAFA T. KASUBHAI (He / Him)
United States Magistrate Judge